**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

______________________________________/

HADEL TOMA,

*Plaintiff*,

v.

KIM HOMAN, in her individual capacity and in her official capacity as Assistant City Manager of Eastpointe, COREY HAINES, in his official capacity as Eastpointe Chief of Police, JOHN DOE #1, and CITY OF EASTPOINTE, a political subdivision of the State of Michigan,

*Defendants*.
______________________________________/

Case No.
Hon.

***Request for Jury Trial***

Detroit Justice Center
Eric Williams (P75688)
Zena Ozeir (P83545)*
4731 Grand River, Suite 200
Detroit, Michigan 48208
(313) 736-5960
(313) 205-0970
ewilliams@detroitjustice.org
zozeir@detroitjustice.org
Counsel for Plaintiff

* Application to practice before the Eastern District to be submitted

## VERIFIED COMPLAINT

**NOW COMES** Plaintiff, HADEL TOMA, by and through his attorneys, Eric Williams and Zena Ozeir of the Detroit Justice Center, and for his Complaint states as follows:

## INTRODUCTION

1. This case seeks to protect and vindicate fundamental constitutional rights. It is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' actions, policies, practices, customs, and/or procedures that deprived Plaintiff of the right to engage in speech and expressive activities in the City of Eastpointe ("Eastpointe") during a public forum ("Public Forum") on or about October 15, 2025. Defendants' acts, policies, practices, customs, and/or procedures will continue to deprive Plaintiff of his fundamental constitutional rights at future Public Forums.

2. Plaintiff seeks a declaration that Defendants violated his clearly established constitutional rights as set forth in this Complaint; a permanent injunction enjoining the enforcement of Defendants' unconstitutional, policies, practices, customs, and/or procedures as set forth in this Complaint; and a judgment awarding damages against all Defendants. Plaintiff also seeks an award of his reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's claims arising under the U.S. Constitution pursuant to 28 U.S.C. § 1331.

4. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. §1391(b) because the events giving rise to Plaintiff's claims occurred in this District.

5. This Court is authorized to award the requested declaratory and injunctive relief under 42 U.S.C. § 1983, 28 U.S.C. §§ 2201-2202, and the Court's equitable powers.

## **PARTIES**

6. Plaintiff Hadel Toma, ("Mr. Toma") is a longtime resident of Eastpointe, Michigan, who has been vocal on a variety of issues of local concern, including animal rights. Mr. Toma is of Palestinian descent.

7. Defendant City of Eastpointe ("Eastpointe") is a municipal corporation duly organized and existing under the Constitution and laws of the State of Michigan. At all relevant times, Eastpointe acted through its agency, the Eastpointe Police Department ("EPD"), and through EPD's officers, agents, and employees, including Defendant Chief Corey Haines, who is EPD's final policymaker for purposes of the claims set forth herein.

8. Defendant Kim Homan ("Homan") is and was at all relevant times, the Assistant City Manager for Defendant City of Eastpointe and acting under color of state law. Homan is sued in both her official and personal capacities.

9. Defendant Police Chief Corey Haines ("Haines") is and was at all relevant times an agent, servant, and/or employee of Defendant Eastpointe, acting under color of state law. On behalf of Defendant Eastpointe, Defendant Haines is responsible for the policies, practices, customs, and procedures of the Eastpointe Police Department, for the training and supervision of the officers of the Eastpointe Police Department, including the training and supervision of Defendant John Doe 1, and for those acts committed pursuant to the training, supervision, policies, practices, customs, and

procedures that deprived Plaintiff of his fundamental constitutional rights as set forth in this Complaint. Defendant Haines is sued in his personal and official capacities.

10. Plaintiff is informed, believes, and thereupon alleges that Officer John Doe was an agent, servant, and employee of Defendant City of Eastpointe, and/or the Eastpointe Police Department.

11. At all relevant times, Defendant Eastpointe, through Defendant Haines and the Eastpointe Police Department, trained, supervised, and employed its officers, including Defendant John Doe 1.

12. Defendant Eastpointe's policies, practices, customs, and/or procedures, as enforced through Defendants Haines, Homan, and John Doe 1, and Defendant Eastpointe's failure to adequately supervise and train the officers of the Eastpointe Police Department, including the failure to adequately supervise and train Defendant John Doe 1, were each a moving force behind the deprivation of Plaintiff's fundamental constitutional rights as set forth in this Complaint.

## BACKGROUND AND STATEMENT OF FACTS

### The Public Forum

13. Eastpointe, Michigan is a city of approximately 35,000 people on the northeastern border of the City of Detroit.

14. On October 15, 2025, Eastpointe hosted a "public forum" for residents to share their concerns regarding the proposed road diet for 9 Mile Road.

15. The posted notice for the forum contained no official rules for attendees' conduct, but upon information and belief was conducted in a manner similar to city council meetings.

16. City council meetings rules appear on the City of Eastpointe's website. (Exhibit 1)

17. There are only three rules listed: (a) Public must first state their name and place of residence; (b) Public participants may speak for a maximum of three minutes; and (c) Public participants may speak only once during each public comment session. (City of Eastpointe, *Mayor and Council*, "Hearing of the Public" Rules)

18. None of the rules published by the City prohibits an attendee from silently holding a sign at a public meeting.

19. Plaintiff Hadel Toma is a resident of the City of Eastpointe and has lived in Eastpointe for twenty years.

20. Mr. Toma is of Palestinian descent.

21. Mr. Toma is actively engaged in matters concerning his community. He served as a member of a resident commission and has regularly attended and spoken at city council meetings for over seven years.

22. Mr. Toma attended the public forum on October 15, 2025, to share his views on the road diet, like any other resident.

23. Mr. Toma arrived to find a long list of other community members who wanted to speak, added his name to the list, and proceeded to wait for his turn to make his public comment.

24. At the time of Mr. Toma's arrival, there were no seats available, so Mr. Toma stood as he waited.

25. Amidst the loud buzzing of the room, which was full of people who were speaking loudly and spiritedly, Mr. Toma stood quietly in a corner holding a sign.

26. Mr. Toma's sign read "Eastpointe City Council is complicit in Palestinian genocide."

27. Mr. Toma was not the only person in the room holding a sign during the public forum, but Mr. Toma's sign was the only one related to Palestine.

28. Some attendees "booed" Mr. Toma when they saw his sign, but Mr. Toma did not verbally engage with them.

Mr. Toma's Expulsion from the Public Meeting

29. Shortly after Mr. Toma stood silently with his sign, Defendant Police Chief Corey Haines approached him and directed him to leave the meeting room and go into the hallway with his sign.

30. Mr. Toma was the only attendee holding a sign who was instructed to go into the hallway.

31. Mr. Toma did not want to disrupt the Public Forum and followed the police chief's order to leave the meeting room.

32. While in the hallway, Mr. Toma stood silently holding his sign and waited for his turn to speak.

33. Mr. Toma was then as confronted by Defendant assistant city manager, Kim Homan and an unidentified security guard.

34. Ms. Homan proceeded to approach Mr. Toma and declare, "You have to get out of here."

35. Mr. Toma responded that Chief Haines had advised him that he could stand in the hallway as long as he was not blocking anyone.

36. The unidentified security guard then said to Mr. Toma, "Get the hell out of here."

37. When Mr. Toma asked why the security guard was threatening him, the security guard responded, "so what if I am?"

38. Ms. Homan then became visibly agitated and repeatedly told Mr. Toma to "get the hell out of here" to "back up" and stating that "there are no cameras here."

39. Ms. Homan then proceeded to order Mr. Toma to "hop up on your camel and get out of here with your Palestinian shit."

40. Chief Haines then came into the hallway and told Mr. Toma he had given him bad advice when he instructed him to go into the hallway, and that the city attorney had instructed him to remove Mr. Toma from City Hall.

41. Mr. Toma was ejected from the building entirely, and as a result, was denied the opportunity to speak at the public forum.

The ACLU's Demand Letter and FOIA Request

42. On December 2, 2025, the American Civil Liberties Union of Michigan ("ACLU") wrote to Eastpointe Mayor Michael Klinefelt and City Attorney Richard Albright on Mr. Toma's behalf, reporting the October 15, 2025, incident, requesting an immediate investigation, and seeking assurances that Mr. Toma would encounter no hostility should he appear at or around City Hall to exercise his First Amendment rights. (Exhibit 2)

43. The ACLU's December 2, 2025, letter also included a request under Michigan's Freedom of Information Act, MCL 15.231 et seq., seeking, among other things: all documentation of complaints of discrimination against city officials for the past three years; all documentation of incidents concerning Mr. Toma for the past three years;

all video footage from Eastpointe City Hall (including the lobby and hallway) from the hour before the October 15, 2025 public forum began until it ended; all body-worn camera footage of Chief Haines' interactions and discussions regarding Mr. Toma from October 15, 2025; and all policies regarding public meetings, public comment, and the removal of persons from meetings and from City Hall.

<u>Eastpointe's FOIA Response</u>

44. On December 29, 2025, City Attorney Albright responded to the FOIA request on behalf of the City. (Exhibit 3)

45. The City stated that the City Hall video footage from October 15, 2025 "no longer exists" and that the City "did not receive any request to preserve same during the retention period." The City later confirmed that its video retention period is thirty days. (Exhibits 3, 4)

46. The City stated that Chief Haines does not wear a body-worn camera.

47. Accordingly, by the City's own account, no video or body-camera footage of Defendants' treatment of Mr. Toma was preserved.

48. In response to the request for policies governing public meetings, the City stated that it follows the Sturgis Standard Code of Parliamentary Procedure and the requirements of the Michigan Open Meetings Act, and quoted the standard language printed on Eastpointe City Council meeting agendas. None of the rules or policies identified by the City prohibits the display of a sign at a public meeting.

49. The City stated that, apart from noting that Mr. Toma had been a member of a resident commission and has spoken during public hearings before City Council over

the past several years, it was not in possession of any documentation of incidents concerning Mr. Toma for the past three years.

50. The City thus possesses no documentation that Mr. Toma was disruptive at the October 15, 2025, public forum or at any other public meeting.

51. In response to the request for complaints of discrimination against city officials, the City disclosed three complaints from the preceding three years: an EEOC complaint by Juanita Waltower; a memorandum by Deputy Personnel Director Vicky Brooks; and a civil rights complaint by Ms. Brooks.

52. The Brooks memorandum, dated August 27, 2025, alleged, among other things, that city management decisions violated Title VII of the Civil Rights Act of 1964 and had "resulted in discriminatory practices within the Eastpointe organization," including the removal of Black and LGBTQ+ managers from bi-weekly management meetings, "leaving only white race individuals in the meetings." (Exhibit 5)

Eastpointe's Investigation

53. Following the ACLU's letter, City Manager Ryan Madis conducted an investigation into the allegations against Ms. Homan.

54. By letter dated January 26, 2026, and provided to the ACLU on February 8, 2026, Mr. Madis concluded that Ms. Homan "in no way denied Mr. Toma's right to public comment," asserted that Mr. Toma "was escorted from Council Chambers by Police Chief Haines and Assistant City Manager Homan because his behavior was disruptive to the conduct of the forum," and stated that Ms. Homan "did not use profane or derogatory language." (Exhibit 5)

55. The investigation letter stated that Mr. Madis had "reviewed all available evidence," although, by the City's own account, the video footage of the incident no longer existed, and no body-camera footage was ever created.

56. The letter's assertion that Mr. Toma's behavior was "disruptive" is contradicted by the City's own FOIA response, which identified no documentation of any disruptive conduct by Mr. Toma.

57. In correspondence with the City in January 2026, the ACLU also advised that it had received at least one other, unrelated report that Chief Haines had ejected another person from a city council meeting due to that person's speech. (Exhibit 3)

Ongoing Irreparable Harm

58. Mr. Toma has continued to engage in protected expressive activity. Among other things, the Eastpointe Police Department's records include a December 28, 2025, report in which Mr. Toma reported that he was assaulted while protesting on a public sidewalk on Eight Mile Road. (Exhibit 4)

59. Mr. Toma has protested outside of Eastpointe City Hall numerous times. As a result of Defendants' conduct, he is now worried that city officials will call the police if he is seen protesting there again.

60. Mr. Toma is also unsure whether he should appear at city council meetings should he decide that he would like to offer public comment on other matters.

61. Defendants' actions were designed to, and in fact did, chill Mr. Toma's exercise of his First Amendment rights, and that chilling effect is ongoing.

**COUNT 1**

**Unconstitutional Restraint on Speech**
**In Violation of the First Amendment and 42 U.S.C. § 1983**
**Against All Defendants**

62. All preceding paragraphs are incorporated by reference.

63. Plaintiff brings this claim pursuant to 42 U.S.C. §1983.

64. Mr. Toma engaged in speech protected by the first Amendment of the U.S. Constitution when he displayed his sign supporting Palestine.

65. Acting under color of law and pursuant to the customs, policies and/or practices of Eastpointe, Defendants, acting in their respective individual and/or official capacities engaged in conduct that violates Plaintiff's free-speech rights under the First and Fourteenth Amendments of the U.S. Constitution.

66. The First Amendment to the United States Constitution guarantees individuals in this country the right to freedom of speech and expression. The First Amendment serves as a restriction on state and local government officials through the Fourteenth Amendment.

67. The First Amendment prohibits government officials from regulating expression based on the views expressed, a concept known as "viewpoint discrimination."

68. "Viewpoint discrimination is an egregious form of content discrimination and is presumptively unconstitutional." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (internal quotation omitted).

69. Persons violating the First Amendment under color of state law are liable at law and in equity under 42 U.S.C. § 1983.

70. Defendants engaged in viewpoint discrimination when Mr. Toma, alone among those

in attendance, was asked to leave the meeting.

71. Defendants' above-described conduct violated Plaintiff's rights to freedom of speech, assembly, and association under the First Amendment to the United States Constitution.

72. Specifically, Plaintiff who was quietly waiting for his turn to make public comment was threatened and removed from the public meeting without justification.

73. Mr. Toma was the only person who was asked to take his sign into the hallway.

74. People whose signs related to different topics were not asked to leave the room.

75. He was then threatened and ordered to leave the building altogether based on the content of his sign, with Defendant Ms. Homan expressing hostility about Mr. Toma's "Palestinian shit."

76. In expelling Mr. Toma because of the message in his sign, Defendants engaged in unconstitutional viewpoint discrimination.

77. As a direct and proximate result of Defendants' actions, policies and practices, Plaintiff suffered a loss of his constitutionally protected rights to engage in free speech.

78. As a result of the foregoing acts and omissions, Plaintiff is entitled to declaratory relief and appropriate injunctive relief against all Defendants, together with compensatory damages, including but not limited to out-of-pocket costs and expenses, punitive damages, costs, and attorney fees.

## COUNT 2

### Fourteenth Amendment – Equal Protection
### 42 U.S.C. § 1983

79. All preceding paragraphs are incorporated by reference

80. By reason of the aforementioned acts, policies, practices, and procedures created, adopted, and enforced under color of state law, Defendants have deprived Plaintiff of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

81. By granting use of a public forum to people whose views Defendants found acceptable but denying use to Plaintiff who expressed a less favored or more controversial view, Defendants have violated the Equal Protection Clause of the Fourteenth Amendment.

82. Mr. Toma's expulsion from the meeting room, the building, and Ms. Homan's directive that Mr. Toma get out of here with his "Palestinian shit" would be deeply offensive on its own, but her command that he "hop up on [his] camel" to do so elevates the encounter to one of unmistakable hostility based on his national origin.

83. That the city official used such degrading stereotypes and language against a resident doing nothing more than standing silently and proceeding to remove him from the premises violated Mr. Toma's right to equal protection.

84. Defendants chose to selectively enforce the policies, practices, procedures, rules, regulations, and restrictions of Eastpointe against Plaintiff during the Public Forum as set forth in this Complaint out of an arbitrary desire to discriminate against Plaintiff based on his speech and national origin in violation of the Equal Protection Clause of the Fourteenth Amendment.

85. As a direct and proximate cause of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including mental anguish and emotional distress, humiliation and embarrassment.

**COUNT 3**

**Retaliation for the Exercise of Protected Speech**
**In Violation of the First Amendment and 42 U.S.C. § 1983**
**Against All Defendants**

86. All preceding paragraphs are incorporated by reference.

87. Mr. Toma engaged in conduct protected by the First Amendment when he silently displayed a sign addressing a matter of public concern at a public forum. Speech on matters of public concern occurring in a public place is entitled to special protection under the First Amendment. *Snyder v. Phelps*, 562 U.S. 443, 458 (2011).

88. The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018).

89. Acting under color of state law, Defendants took adverse actions against Mr. Toma because of his protected expression, including: (a) singling him out, alone among sign-holding attendees, for removal from the meeting room; (b) threatening him in the hallway; (c) subjecting him to degrading, discriminatory invective; (d) expelling him from City Hall entirely; and (e) denying him the opportunity to speak during public comment.

90. Each of these actions, standing alone, would deter a person of ordinary firmness from continuing to engage in protected activity. See *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001).

91. Defendants' adverse actions were motivated by the content and viewpoint of Mr. Toma's sign, as evidenced by, among other things, the fact that Mr. Toma was the only sign-holding attendee removed, and by Defendant Homan's order that Mr. Toma "hop up on your camel and get out of here with your Palestinian shit."

92. Defendants' retaliatory conduct did, in fact, chill Mr. Toma's speech. Mr. Toma, who has protested outside City Hall numerous times, now fears that city officials will summon police if he is seen protesting there again, and is unsure whether he should appear at city council meetings to offer public comment.

93. "Retaliation . . . against the exercise of First Amendment rights is itself a violation of the First Amendment." *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994).

94. As a direct and proximate result of Defendants' retaliatory conduct, Mr. Toma has suffered the deprivation of his constitutional rights, mental anguish, emotional distress, humiliation, and embarrassment, and is entitled to compensatory and punitive damages, declaratory and injunctive relief, and costs and attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988.

## COUNT 4

**Denial of the Right to Petition the Government for Redress of Grievances**
**In Violation of the First Amendment and 42 U.S.C. § 1983**
**Against All Defendants**

95. All preceding paragraphs are incorporated by reference.

96. The First Amendment guarantees the right of the people "to petition the Government for a redress of grievances." U.S. Const. amend. I. The Petition Clause protects the right of individuals to appeal to government, including local government, for the redress of grievances. See *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011).

97. The City of Eastpointe convened the October 15, 2025, public forum for the express purpose of receiving comments from members of the public regarding the proposed 9 Mile Road road diet.

98. Mr. Toma placed his name on the speakers' list and waited for his turn to address the City regarding the road diet.

99. Acting under color of state law, Defendants removed Mr. Toma from the meeting room and then from City Hall before his turn to speak, thereby denying him the opportunity to petition his local government at the very proceeding convened for that purpose.

100. Defendants denied Mr. Toma this opportunity because of the content and viewpoint of his sign, and not because of any breach of the peace, disruption, or violation of any written rule.

101. As a direct and proximate result of Defendants' conduct, Mr. Toma was deprived of his First Amendment right to petition the government, and is entitled to compensatory and punitive damages, declaratory and injunctive relief, and costs and attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988.

**COUNT 5**
**Municipal Liability — Unconstitutional Policy, Custom, Ratification, and Failure to Train and Supervise**
**42 U.S.C. § 1983**
**Against Defendant City of Eastpointe**

102. All preceding paragraphs are incorporated by reference.

103. A municipality is liable under 42 U.S.C. § 1983 when the execution of its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly

be said to represent official policy, inflicts a constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

104. The constitutional violations alleged herein were committed by, and at the direction of, officials with policymaking and enforcement authority for the City: the Chief of Police, the Assistant City Manager, and the City Attorney, who, by Chief Haines' own account, instructed that Mr. Toma be removed from City Hall.

105. The City has further ratified the unconstitutional conduct of its officials. When an authorized policymaker approves a subordinate's decision and the basis for it, the municipality may be held liable. See *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

106. Specifically, City Manager Ryan Madis, the City's chief administrative officer and Personnel Director, conducted an investigation and, by letter dated January 26, 2026, approved and adopted the conduct of Defendants Homan and Haines, concluding that Ms. Homan acted "in line with City of Eastpointe meeting standards". This is notwithstanding that the City's video footage had not been preserved, no body-camera footage existed, and the City's own records contained no documentation of any disruptive conduct by Mr. Toma. (Exhibit 4)

107. Upon information and belief, the City has a custom, policy, or practice of suppressing disfavored speech at public meetings, as evidenced by at least one other report that Chief Haines ejected another person from a city council meeting due to that person's speech.

108. Upon information and belief, the City also has a custom, policy, or practice of tolerating discriminatory conduct by its officials, as evidenced by multiple internal

complaints of discrimination within the three years preceding this action, including an EEOC complaint and a civil rights complaint and memorandum by the City's Deputy Personnel Director alleging discriminatory practices by city management. (Exhibits 2, 5)

109. The City failed to adequately train and supervise its officials and employees, including Defendants Homan, Haines, and John Doe #1, regarding the First Amendment rights of members of the public at public meetings, notwithstanding the obvious need for such training, and this failure amounts to deliberate indifference to the rights of persons with whom those officials come into contact. See *City of Canton v. Harris, 489* U.S. 378 (1989).

110. The City's policies, customs, practices, ratification, and failures to train and supervise were a moving force behind, and the direct and proximate cause of, the violations of Mr. Toma's constitutional rights, entitling him to compensatory damages, declaratory and injunctive relief, and costs and attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988.

**COUNT 6**
**Discrimination in Public Services Based on National Origin**
**In Violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.**
**Against All Defendants**

111. All preceding paragraphs are incorporated by reference.

112. The Elliott-Larsen Civil Rights Act ("ELCRA") declares that "the full and equal utilization of public accommodations, public service[s], and educational facilities without discrimination because of . . . national origin . . . is recognized and declared

to be a civil right." MCL 37.2102(1).

113. A "public service" under the ELCRA includes a public facility, department, agency, board, or commission owned or operated by a political subdivision of the state. MCL 37.2301(b). Defendant City of Eastpointe, its City Hall, and the October 15, 2025 public forum are public services within the meaning of the ELCRA.

114. The ELCRA "seeks to dismantle the prejudices and biases borne against persons because of their membership in a certain class, and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Rouch World, LLC v. Dep't of Civil Rights*, 510 Mich. 398, 405 (2022).

115. Mr. Toma is of Palestinian descent and is a member of a class protected by the ELCRA on the basis of national origin and ethnicity.

116. Acting in the course of providing a public service, Defendants denied Mr. Toma the full and equal enjoyment and utilization of that public service by removing him from the public forum, threatening him, expelling him from City Hall, and denying him the opportunity to speak during public comment.

117. Defendants' conduct was motivated by Mr. Toma's national origin, as evidenced by Defendant Homan's directive that Mr. Toma "hop up on your camel and get out of here with your Palestinian shit", an invocation of degrading ethnic stereotypes directed at a resident who was doing nothing more than silently holding a sign.

118. As a direct and proximate result of Defendants' violation of the ELCRA, Mr. Toma has suffered mental anguish, emotional distress, humiliation, and embarrassment, and is entitled to damages, injunctive relief, and costs and reasonable attorney fees pursuant to MCL 37.2801.

**COUNT 7**

**Unlawful Exclusion from a Public Meeting**
**In Violation of the Michigan Open Meetings Act, MCL 15.261 et seq.**
**Against Defendants City of Eastpointe, Haines, and Homan**

119. All preceding paragraphs are incorporated by reference.

120. The Michigan Open Meetings Act ("OMA") requires that all meetings of a public body be open to the public and provides that a person shall not be excluded from a meeting otherwise open to the public except for a "breach of the peace actually committed at the meeting." MCL 15.263.

121. The October 15, 2025, public forum was a meeting of a public body within the meaning of the OMA. Indeed, in its December 29, 2025, FOIA response, the City stated that it follows the requirements of the Open Meetings Act for its public meetings, and the standard language on the City's own council agendas, which it quoted in that response, acknowledges that a person may be removed from a meeting only "for a breach of the peace committed at the meeting." (Exhibit 2)

122. Mr. Toma committed no breach of the peace at the October 15, 2025, public forum. He stood silently in a corner holding a sign, and the City's own records contain no documentation of any disruptive conduct by him.

123. Defendants Haines and Homan nevertheless excluded Mr. Toma from the meeting and from City Hall, in violation of the OMA.

124. Defendants' violation of the OMA was intentional. A public official who intentionally violates the OMA is personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees. MCL 15.273(1).

125. Mr. Toma is further entitled to injunctive relief compelling compliance with, and enjoining further noncompliance with, the OMA. MCL 15.271.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs respectfully request that the Court:

A. Declare that Defendants' use of their official authority as basis to suppress Mr. Toma's support of Palestine violates the First Amendment;

B. Enter a preliminary and permanent injunction enjoining Defendants from targeting pro palestinian speech;

C. Award Plaintiffs compensatory (Claims I and II) and punitive (Claim I) damages pursuant to 42 U.S.C. §1983;

D. Award Plaintiffs' attorney's fees under 42 U.S.C. § 1988;

E. Award Plaintiffs their costs; and

F. Award such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ Eric C. Williams

Eric C. Williams (P75688)
Counsel for Plaintiff

/s/ Zena Ozier

Zena Ozeir (P83545)
Counsel for Plaintiff

**DEMAND FOR JURY TRIAL**

In compliance with Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 14, 2026

Respectfully submitted,